**STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Plaintiff,**

v.

**LOUISIANA TOWING CO., et al., Defendants.**

**AVONDALE SHIPYARDS, Defendant Third-Party Plaintiff-Appellant,**

v.

**UTAH HOME FIRE INSURANCE CO., Third-Party Defendant-Appellee.**

No. 82–3047.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 26, 1982.

Hammett, Leake & Hammett, Eldon T. Harvey, III, J. Gregg Collins, New Orleans, La., for defendant third-party plaintiff-appellant.

Michael L. McAlpine, John F. Colowich, New Orleans, La., for third-party defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

I.   The Facts

On December 19, 1977, the double-boomed derrick barge, the D/B Avon Sr., struck the Waggoner Bridge which crosses over the intracoastal waterway. At the time of the allision, the D/B Avon Sr. had been dispatched by its owner, appellant Avondale Shipyards, to perform a heavy lift at Houma, Louisiana. The two boats transporting the D/B Avon Sr. were the lead vessel, M/V Mr. Eddie, and the tail boat, the M/V Badger Boy. The M/V Mr. Eddie was owned by Louisiana Towing Corp. and the M/V Badger Boy was owned by the Badger Fleeting Corp.

The State of Louisiana filed suit against Avondale Shipyards, and the owners of the other two vessels for damage to the bridge.

Avondale Shipyards joined other parties not now before the Court. The Shipyards then settled with the State of Louisiana in the sum of $325,000, reserving its right to proceed against the owners of the other two vessels, Louisiana Towing and Badger Fleeting, as well as against the Utah Home Fire Insurance Co. In this posture the case went to trial without a jury in the district court. The judgment of the district court absolved Louisiana Towing and Badger Fleeting of all liability, finding the allision to be caused solely by the negligence of D/B Avon Sr. owned by appellant Avondale Shipyards. The district court also held that Utah Home Fire Insurance Co. was not liable to Avondale Shipyards. It is the denial of liability on the part of Utah Home Fire Insurance Co. which is the sole subject of this appeal.

Utah Home Fire Insurance Co. had issued a hull policy to Louisiana Towing Corp. which contained a collision and tower's liability endorsement. The policy listed the four vessels covered on its schedule, M/V Mr. Eddie being one of the four. Avondale Shipyards' claim for indemnity against Utah Home Fire is based solely upon a typewritten "Special Condition" of the policy which provided:

While the vessels named herein are working for Avondale Shipyards, Inc. at any given time, then Avondale Shipyards, Inc. is named as an additional assured during that particular time and rights of subrogation hereunder are waived with respect to Avondale Shipyards, Inc.

It is Avondale's contention on this appeal that this special condition in the policy covered the negligence of the D/B Avon Sr. when the M/V Mr. Eddie (a vessel covered in the policy) was being used to transport the Avon barge, even though the M/V Mr. Eddie was absolved of all fault in the allision caused by the Avon double-boomed derrick barge.

## II. The Wording of the Contract

On its face the contention of Avondale appears to fail because this is a policy of hull insurance with an added collision and tower's liability clause which reads:

And it is further agreed that if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise . . .; or shall . . . cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise . . . and the Assured . . . in consequence of the insured vessel being at fault shall become liable to pay by way of damages . . . we Underwriters, will pay the Assured . . . .

The emphasis in this collision and tower's liability clause, of course, is upon the fault of the vessel which is insured under the policy.

Reading these two contract provisions together, the special condition making Avondale an assured under the contract, and then indemnifying the assured if it becomes liable because of the fault of the "insured vessel" under the contract, appears to make it clear that Avondale is protected only if it becomes liable because the M/V Mr. Eddie (the insured vessel under the contract) was at fault.

Countering this overt interpretation of the insurance policy, Avondale urges that the special condition applicable to it had the effect of making it an assured with respect to its own vessel, the D/B Avon Sr., so long as the M/V Mr. Eddie was being used by Avondale in connection with the towage of the D/B Avon Sr. Appellant reaches this interpretation almost entirely by contrasting the Avondale special condition with others contained in the contract and applicable to other companies made assureds which other special conditions contain the additional limiting language "with respect to the vessel(s) so employed." It is Avondale's position that without these limiting words the vessels involved in the policy conditions having to do with Avondale are not restricted to those four listed in the schedule.

## III. The Interpretation of the Contract

It is well established that Louisiana law leans heavily in the direction of treating the interpretation of a contract as a question of law. A contract is to be read according to its plain intendment. La.Civ.Code Ann.

arts. 1945, 1946. "Absent latent or patent ambiguities, the meaning of a contract is for the court as a matter of law." *Battig v. Hartford Accident & Indemnity Co.,* 608 F.2d 119, 120 (5th Cir. 1979). The plain intendment of the special condition applicable to Avondale when taken with the collision and tower's liability proviso is not subject to question. The clear meaning of the words is that Avondale becomes an assured under the policy as to the vessels covered by the policy. This is, after all, a policy of hull insurance. Avondale's interpretation would insist that all of the vessels which Avondale owns would also be covered by the hull insurance policy issued to the owners of the M/V Mr. Eddie so long as that vessel was being used in connection with one of the vessels owned by Avondale. This would be a remarkable and unusual expansion of the concept of hull insurance at the very least. It would also mean, of course, that not only would Avondale be protected from liability as an assured but it would be protected also as to any loss or damage to its own vessels even without the negligence of the M/V Mr. Eddie.

No authority is cited by Avondale for the proposition that the different wording of special conditions made applicable to other companies under the policy should be treated as creating lingering ambiguities as to the precise and obvious terms of the provisions under which Avondale itself is covered. But even assuming that this legerdemain could be accomplished, Avondale points to only one difference between the Avondale special condition and the special condition provisions applicable to some of the other companies involved with the owners of M/V Mr. Eddie under this policy. There are other differences as well. For example, one of the special conditions applicable to another company instead of saying "while the vessels named herein are working for" provides that "while the within insured vessel(s) is *employed by* or actually working for." (emphasis added). The special condition applicable to another company provides that while any of the vessels insured are working for the company which is the beneficiary of the special condition, that company "shall be considered an additional insured hereunder with respect to the vessel(s) so employed." Thus each special condition is worded differently in ways which may or may not be important.

It is not for us to decide whether these differences in wording of different special conditions written at different times with different beneficiaries have significance or not. This case does not involve those other special condition provisions. What is critical is the fact that the Avondale special condition is plain and unambiguous in its limitation in applicability to the fault of the vessels contained in the schedule of the hull policy itself.

This conclusion is amply supported by cases construing similar contracts. An insurance policy must be construed in its entirety, and conditions attached cannot be interpreted in isolation so as to render other provisions of the policy ineffective. *Martindale Lumber Co. v. Bituminous Casualty Corp.,* 625 F.2d 618, 623 (5th Cir. 1980). Interpreting the special condition in isolation, as pointed out above, could give the policy a breadth of coverage that clearly was not in the contemplation of the parties at the time that the owner of the M/V Mr. Eddie, the principal insured, paid the premium. Nor was it in the contemplation of the Utah Home Fire Insurance Co. which issued hull insurance on the four vessels contained in the schedule.

In *Wedlock v. Gulf Mississippi Marine Corp.,* 554 F.2d 240, 242 (5th Cir. 1977), we found that a similar policy under similar facts did not extend coverage to the liability of the charterer of the tug that arose from its negligent acts with respect to its own barge. We reasoned that the barge was not listed as a "covered vessel" in the policy and that nothing in the policy indicated that by insuring the tug the insurers intended to insure against the barge owners' negligence.

In *Wedlock,* at 244, we expressed our approval of the holding in *Dow Chemical Co. v. Tug Thomas Allen,* 349 F.Supp. 1354 (E.D.La.1972). In that case Dow owned a

barge which was towed by the insured's tug. The tug P&I policy named Dow an additional assured as charterer. The barge operator insisted on proceeding through a channel despite the absence of pipeline charts; and the tug captain acquiesced. The tug then collided with a gas pipeline, causing an explosion and fire which injured a seaman and damaged the barge.

The district court found the barge and tug operators jointly negligent. The critical portion of the holding for our purposes, however, is that the court limited Dow's coverage under the policy to that attributable to the tug's (not the barge's) negligence. The court reasoned, 349 F.Supp. at 1364–65:

> Although the tug's P&I policy names Dow as an additional assured, the coverage afforded thereunder is limited to the assured's liability "in respect of" the insured vessel, i.e., the Tug THOMAS ALLEN. Dow, therefore, is afforded no coverage under this policy except with respect to fault on the part of the THOMAS ALLEN or the negligence of her crew. Dow's liability in this case arises from its negligence as a barge owner, or more importantly, a service company anxious to perform services for its customers without a delay. No such coverage was provided by New York Underwriters Insurance Company or Utica Mutual Insurance Company, Pitre & Guidry primary and excess P&I underwriters, respectively.

In *Lanasse v. Travelers Insurance Co.,* 450 F.2d 580 (5th Cir. 1971), the comparable contract provision in the P&I policy there involved was almost identical with the policy in the principal case. It did not contain the language upon which Avondale so heavily relies restricting the application of the special condition "with respect to the vessel(s) so employed." It also contained the specific reference to waiving rights of subrogation which is contained in the Avondale special condition and not in the others upon which Avondale relies. In *Lanasse* the Court held that the company subject to the special condition which was liable for its own negligence could not as an additional "assured" be indemnified when the vessel which was covered by the policy in no way was responsible for the accident. As Judge Brown said in that opinion: "There must be at least some causal operational relation between the vessel [covered by the policy] and the resulting injury." *Lanasse v. Travelers Ins. Co.,* at 584.

### IV. Obligation to Defend

Avondale also contends that it is entitled to reimbursement of defense costs, including attorneys' fees, based upon Utah Home's failure to defend it with respect to the claims against it as owner of the Avon Sr.

Avondale relies on *Bandy v. Avondale Shipyards, Inc.,* 458 F.2d 900, 902 (5th Cir. 1972), which held that under Louisiana law, an insurer's duty to defend a suit brought by its insured is determined by the allegations of the complaint, and the insurer is obligated to defend unless those allegations, taken as true, unambiguously exclude coverage. Avondale contends that paragraph 6 of the state's complaint obligated Utah Home to defend it, because it alleged that the M/V Mr. Eddie was working for Avondale at the time of the allision. The paragraph reads thus:

> On or about December 19, 1977, at approximately 2:15 P.M., the derrick barge "AVON SR." was being towed by two (2) tugs, the "MR EDDIE" and the "BADGER BOY", westbound in the Intracoastal Canal, and said flotilla collided with and damaged the main span on the highrise bridge on State Route La 3134 which spanned the navigable waterway and caused extensive damage to the main girders, span diaphrams and bracing.

Undoubtedly the allegation of paragraph 6 required Utah Home to assume Avondale's defense respecting the M/V Mr. Eddie, but Utah Home did that. The allegations of the complaint that the D/B Avon Sr. was liable to the state cannot obligate Utah Home to defend Avondale with respect to that vessel where the policy does not cover the D/B Avon Sr. *See Bandy,* 458 F.2d at 903–04 (policy unambiguously excluded coverage). Since, as we decide above, the poli-

cy did not cover Avondale with respect to any liability of the D/B Avon Sr., Utah Home did not owe Avondale a defense with respect to that vessel.

### V.  Conclusion

We can find no justification in the terms of the hull insurance policy to extend liability coverage to a vessel not listed in the schedule.  The special condition in question fulfilled the obvious and important function of providing for the indemnity of Avondale if it became liable as a result of the negligence of a vessel covered by the hull policy being used in connection with its vessel. But that situation is not this case.  In this case, Avondale's vessel was solely responsible for the allision, and the covered vessel, M/V Mr. Eddie, was totally absolved of liability.  The claims for the costs of Avondale's defense as to D/B Avon Sr. fall because of the conclusion that the negligence of the D/B Avon Sr. was not within the coverage of the policy.  The decision of the district court in finding no obligation on the part of Utah Home Fire Insurance Co. to indemnify Avondale is, therefore, correct.

AFFIRMED.